IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIMONE CORDOVA,<br><br>    Plaintiff,<br><br>v.<br><br>SINAI MEDICAL CENTERS d/b/a ADVANCED URGENT CARE, LTD.; DR. MOHAMAD R. ALZEIN, in his individual capacity,<br><br>    Defendants. | Case No.<br><br><br><br>**Plaintiff Demands Trial By Jury** |

COMPLAINT

Plaintiff SIMONE CORDOVA, by and through her undersigned attorneys, files this complaint against Defendants SINAI MEDICAL CENTERS d/b/a ADVANCED URGENT CARE, LTD. and DR. MOHAMAD R. ALZEIN, in his individual capacity, (collectively, "Defendants") and states as follows:

NATURE OF THE ACTION

1. Plaintiff brings this action to redress interference with Plaintiff's exercise of rights under the Family and Medical Leave Act of 1993, as amended ("FMLA"), 29 U.S.C. § 2601, *et seq.*, (Count I); and retaliation for Plaintiff's exercise of rights under the FMLA (Count II).[1]

JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under the FMLA, 29 U.S.C. § 2601 *et seq.* (specifically §§ 2615 and 2617). The FMLA authorizes private civil actions in federal court by employees to enforce their FMLA rights.

---

[1] Plaintiff has additional Title VII claims against Defendants, which she plans to add in an amended pleading in anticipation of the EEOC issuing her a Right to Sue notice. On October 28, 2025, Plaintiff sent the EEOC a letter requesting her Right to Sue with no response due to the government shutdown.

3. Further, venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c), as Plaintiff and all Defendants either reside in this district or have their principal place of business in this district and all events giving rise to Plaintiff's claims occurred within this district.

## PARTIES

4. Plaintiff Simone Cordova ("Plaintiff" or "Ms. Cordova") is an individual residing in Illinois. She was employed by Defendants as an Advanced Medical Assistant from on or about January 10, 2022, until her termination in July 2024.

5. At all relevant times, Plaintiff was an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2), in that she was employed for at least twelve months and worked at least 1,250 hours for Sinai during the twelve-month period preceding her leave.

6. Defendant Sinai Medical Centers d/b/a Advanced Urgent Care, LTD ("Sinai") is a corporation organized under the laws of the State of Illinois and conducting business in the State of Illinois.

7. Defendant Dr. Mohamad R. Alzein ("Dr. Alzein") is the leading physician at Sinai. He is sued in his individual capacity. Dr. Alzein had the authority to interfere with, deny or retaliate against Plaintiff's FMLA rights on behalf of Sinai.

8. At all relevant times, Defendants were "employers" of Plaintiff within the meaning of 29 U.S.C. § 2611(4) in that Defendant Sinai is a "person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year," and the individual Defendant Dr. Alzein was a "person who act[ed], directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

9. In or around January 2022, Plaintiff began working for Defendants as a medical assistant.

10. In mid-2023, Plaintiff notified Defendants that she was pregnant.

11. Plaintiff had a high-risk pregnancy due to her history of multiple miscarriages, a fact well-known to Dr. Alzein who previously treated Plaintiff for her recurrent miscarriages.

12. Throughout her pregnancy, Plaintiff experienced serious pregnancy complications, including frequent bleeding and the risk of miscarriage.

13. Working long shifts on her feet at Sinai aggravated Plaintiff's condition. When she stayed on her feet all day, she would start bleeding excessively, increasing her risk of miscarriage or early labor.

Plaintiff's Early Labor and Commencement of Leave:

14. In December 2023, Plaintiff went into preterm labor and was hospitalized. The hospital managed to stop her early labor at that time, but the doctors ordered Plaintiff to remain on bed rest and light duty work for the remainder of her pregnancy.

15. On December 14, 2023, Plaintiff's physician provided a letter for Defendants that Plaintiff be restricted to light, administrative duty work with "adequate periods of rest."

16. Plaintiff promptly informed Defendants of this medical development.

17. Defendants did not comply with Plaintiff's request for a medical accommodation, and she continued to bleed excessively during her shifts because she was being overworked above her medical restrictions.

18. Plaintiff initiated additional conversations with Defendants about her anticipated medical leave.

3

19. On January 9, 2024, instead of notifying Plaintiff about her FMLA options, Dr. Alzein told Plaintiff to apply for unemployment during her maternity leave to receive some income while out. Dr. Alzein told Plaintiff he would not contest her unemployment application.

20. Plaintiff continued to go into work as Defendants requested in January, but Plaintiff was re-admitted to the hospital for pregnancy complications.

21. Plaintiff informed Defendants that she was in the hospital via text message, stating, "I'm currently in the hospital[.] I've been admitted again."

22. In response, while Plaintiff was in the hospital on or around January 18, 2024, Defendants' manager Ms. Dana Kadro asked Plaintiff via text message to confirm her dates of leave, stating, "Hi Simone, I will need a letter from you stating that you will be voluntarily leaving for maternity leave starting today and the date you will be back please."

23. This text message was the only written communication that Plaintiff received regarding leave; no FMLA notice letter was provided by Defendants.

24. Plaintiff replied that she was uncertain why she needed to submit a letter to Defendants with her return date, as (a) she still was under doctors' care, that she was still in the hospital at the time, and the hospitalization was unexpected; (b) Plaintiff was still approximately one month away from her expected due date; and (c) Dr. Alzein had advised Plaintiff to apply for unemployment.

25. Ms. Kadro did not reply to Plaintiff.

26. Plaintiff stopped working in January 2024, a few weeks before her due date, at the direction of her physician.

27. On February 10, 2024, Defendant's office manager, Amr, sent Plaintiff a text message asking her if she had delivered her baby yet. That same day, Plaintiff replied that she had not delivered her baby and that her birth plan had changed.

4

Birth of Plaintiff's Child and Postpartum Complications:

28. On February 23, 2024, Plaintiff went into labor and gave birth to her baby. When Plaintiff's water broke, she promptly updated Defendants that she was in labor and sent Amr a text message stating the same.

29. Unfortunately, Plaintiff's daughter was born with complications: the baby had a low birth weight and stopped breathing for ten (10) minutes immediately after birth, requiring immediate resuscitation.

30. After giving birth to her daughter, Plaintiff remained under medical care to recover from the birth. Plaintiff also needed time to care for her newborn.

31. Plaintiff expected that she was on maternity leave and that her job would be protected while she cared for her newborn.

32. Defendants had not notified Plaintiff of her expected return date.

Defendants' Failure to Provide Proper FMLA Communications:

33. At no point did Defendants provide Plaintiff with the usual FMLA paperwork such as eligibility notice, rights and responsibilities notice, or designation notice, even though her situation—time off for a serious pregnancy-related health condition and for the birth of a child—was clearly covered under the FMLA.

34. Rather, upon learning of Plaintiff's pregnancy, Dr. Alzein made statements indicating unwillingness to provide proper maternity leave benefits or job protection.

35. Dr. Alzein suggested that Plaintiff file for unemployment benefits or seek government assistance to cover her time off.

36. This response was highly irregular as unemployment insurance is generally not intended to cover maternity leave in these circumstances, and employees on FMLA leave are not terminated such that they would qualify for unemployment.

5

37. Plaintiff, feeling she had no other option for income during her leave, did apply for and received unemployment benefits for an approximate six-month period in early 2024.

38. Defendants' instruction for Plaintiff to rely on unemployment benefits, rather than providing clarity on her leave rights, caused confusion about her employment status during the leave period.

<u>Plaintiff's Efforts to Return to Work in April–May 2024:</u>

39. In April 2024, Plaintiff personally visited Defendants' Chicago clinic location with her newborn. She went to introduce her baby to her coworkers and to speak with someone about plans for returning to work.

40. Plaintiff spoke in person with Dr. Alzein during this visit. Dr. Alzein told Plaintiff that it was *"too soon"* for her to come back and that she should focus on caring for her baby, who was "still too young."

41. Relying on Dr. Alzein's statement not to return to work yet, Plaintiff reasonably believed that the company was allowing her additional leave to care for her infant.

42. Over the next month or so, Plaintiff continued trying to reach the office manager, Amr, to determine a return date.

43. Again, at no point did anyone from Defendants contact Plaintiff in April 2024 to tell her that her FMLA 12-week period (if it had been designated from January) was expiring or to set a firm return-to-work deadline.

<u>Plaintiff's Final Effort to Return to Work and Termination</u>

44. After relying upon the representations made by Dr. Alzein, continued receipt of unemployment benefits, and not receiving any response from Defendants, Ms. Cordova attempted to return to work again in July 2024.

6

45. Defendants terminated Plaintiff for failing to "return to work on time" and informed Plaintiff that her position was filled by a non-pregnant individual while she was on maternity leave.

46. While Plaintiff consistently reached out to Defendants during her leave, Defendants ignored her and failed to restore Plaintiff to her job or an equivalent position when she was ready to return from leave.

47. By their actions and omissions, Defendants interfered with Plaintiff's exercise of FMLA leave rights and retaliated against her for taking leave.

COUNT I – FMLA INTERFERENCE<br>(Against All Defendants)

48. Plaintiff realleges and incorporates by reference the paragraphs 1 through 47 of the Complaint as if fully set forth herein.

49. At all times relevant to this lawsuit, Defendant Sinai was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A), and employed 50 or more employees within 75 miles of Plaintiff's work locations, and Defendant Dr. Alzein was a "person who acts, directly or indirectly, in the interest of any employer to any of the employees of such employer," 29 U.S.C. § 2611(4)(A).

50. Plaintiff was, and continues to be, an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2), in that she was employed for at least twelve months and worked at least 1,250 hours for Defendants during each twelve-month period preceding her leave requests.

51. Plaintiff's medical condition constituted a "serious health condition" within the meaning of 29 U.S.C. § 2611(11).

52. Under the FMLA, "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

53. Employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions. 29 U.S.C. § 2615(a).

54. Plaintiff provided Defendants with the necessary medical certification regarding her serious health condition to put Defendants on notice that she needed FMLA leave.

55. Plaintiff kept Defendants informed regarding her high-risk pregnancy, her medical complications, hospitalization, labor, her need to continue to receive medical treatment, and her interest in returning to work after giving birth.

56. Defendants never informed Plaintiff that she was eligible for FMLA, never informed Plaintiff that her maternity leave was being counted toward her 12-week FMLA entitlement, never sent an official designation notice or return-to-work date, and never explained her rights to maintenance of health benefits or reinstatement pursuant to 29 C.F.R § 825.300(b)(1).

57. Instead, Defendants gave Plaintiff confusing and conflicting information by suggesting she go on unemployment and later telling her to stay home longer with her baby, only to then claim that Plaintiff failed to return to work "on time."

58. Defendants have interfered with, restrained, or denied Plaintiff's exercise of her FMLA rights by failing to advise her of her FMLA rights, scope and period of FMLA leave, misleading her about her return date, coercing her to apply for and rely unemployment benefits instead which extended beyond her FMLA leave period, and terminating her while she was on leave. 29 U.S.C. § 2601, *et seq*.

59. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer loss of income, loss of other employee benefits, costs, fees, expenses, and damage to her reputation.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. A declaration that Defendant's acts and omissions constitute a violation of the FMLA;

B. All lost wages and benefits Plaintiff is owed due to Defendants' violations of the FMLA;
C. Front pay;
D. Liquidated damages in an additional amount equal to the sum of the actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A);
E. Pre- and post-judgement interest;
F. Attorneys' fees and all costs and expenses of suit pursuant to 29 U.S.C. § 2617(a)(3); and
G. Any other equitable relief as the Court deems appropriate.

COUNT II – FMLA RETALIATION
(Against All Defendants)

60. Plaintiff realleges and incorporates by reference paragraphs 1 through 59 of the Complaint as if fully set forth herein.

61. At all times relevant to this lawsuit, Defendant Sinai was an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A), and employed 50 or more employees within 75 miles of Plaintiff's work locations, and Defendant Dr. Alzein was a "person who acts, directly or indirectly, in the interest of any employer to any of the employees of such employer," 29 U.S.C. § 2611(4)(A).

62. Plaintiff was, and continues to be, an "eligible employee" as defined in the FMLA, 29 U.S.C. § 2611(2), in that she was employed for at least twelve months and worked at least 1,250 hours for Defendants during each twelve-month period preceding her leave requests.

63. Plaintiff's medical condition constituted a "serious health condition" within the meaning of 29 U.S.C. § 2611(11).

64. Under the FMLA, "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

65. Employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions. 29 U.S.C. § 2615(a).

66. At all relevant times, Plaintiff engaged in protected activity by informing Defendants of her required leave for her medical condition regarding her high-risk pregnancy and childbirth and continuously contacting Defendants regarding her return from leave.

67. Plaintiff further exercised her rights protected by the FMLA when she took maternity leave and medical leave for her serious pregnancy-related health conditions and the birth of her child.

68. Defendants subjected Plaintiff to adverse employment actions by refusing to reinstate her, replacing her position with a non-pregnant employee while she was on leave, and terminating her employment in July 2024.

69. Defendants' actions constitute unlawful retaliation against Plaintiff for her attempts to exercise her rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1).

70. Defendants' actions were willful and in reckless disregard of Plaintiff's rights under the FMLA.

71. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer loss of income, loss of other employee benefits, costs, fees, expenses, and damage to her reputation.

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. A declaration that Defendants' acts and omissions constitute a violation of the FMLA;
B. All lost wages and benefits Plaintiff is owed due to Defendants' violations of the FMLA;
C. Front pay;
D. Liquidated damages in an additional amount equal to the sum of the actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A);
E. Pre- and post-judgement interest;
F. Attorneys' fees and all costs and expenses of suit pursuant to 29 U.S.C. § 2617(a)(3); and
G. Any other equitable relief as the Court deems appropriate.

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated: October 30, 2025

Respectfully submitted,

/s/ *Mara Baltabols*
One of Plaintiff's Attorneys

Mara Baltabols
WORKPLACE LAW PARTNERS P.C.
155 N. Michigan Avenue, Suite 719
Chicago, IL 60601
Ph.: (312) 861-1800
mara@fishlawfirm.com
docketing@fishlawfirm.com